```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA,         :

        - v -                     :
                                           09 Cr. 558 (CM)
JAMES CROMITIE,                   :
    a/k/a "Abdul Rahman"
    a/k/a "Abdul Rehman"          :
DAVID WILLIAMS,
    a/k/a "Daoud,"                :
    a/k/a "DL",
ONTA WILLIAMS,                    :
    a/k/a "Hamza," and
LAGUERRE PAYEN,                   :
    a/k/a "Amin"
    a/k/a "Almondo"               :

                    Defendants.  :
-------------------------------X
```

## ONTA WILLIAMS SENTENCING MEMORANDUM

                                          JOHN J. BYRNES, ESQ.
                                          Federal Defenders of New York
                                          Attorney for Defendant
                                              **ONTA WILLIAMS**
                                          52 Duane Street - 10th Floor
                                          New York, NY 10007
                                          Tel.: (212) 417-8738

**MARK B. GOMBINER, ESQ.**
**SUSANNE BRODY, ESQ.**

    Of Counsel


TO:   PREET BHARARA, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Appeals Bureau*
Barry D. Leiwant
*Attorney-in-Charge*

June 3, 2011

**BY EMAIL**

The Honorable Colleen McMahon
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:  **United States v. James Cromitie, et.al (Onta Williams)**
>      **09 Cr. 558(CM)**

Dear Judge McMahon:

This letter is written on behalf of Mr. Onta Williams who is currently scheduled for sentencing before this Court on June 16, 2011. We respectfully request that this Court consider both the government's sentencing entrapment (or enhancement) and sentencing manipulation and sentence Mr. Williams below the statutory minimum. Additionally, we incorporate by reference the sentencing submissions of all co-defendants and join in the objections to the Sentencing Guideline calculations of the co-defendants as they apply to Mr. Williams. [1] This Court is mandated to impose a sentence that is sufficient but not greater than necessary under Title 18 U.S.C. §3553. Under all of the facts and unusual circumstances of this case a sentence of fifteen years of incarceration and five years of supervised release would satisfy that mandate. We respectfully ask this Court to take the bold step of finding that the Probation Guidelines are incorrect as a number of enhancements result in impermissible double counting and that the counts that trigger a 25 year mandatory minimum are the result of sentencing manipulation and therefore violated defendants' Due Process rights.

Over two years ago four men were arrested for the attempted bombing of two synagogues in Riverdale using three fake IEDs supplied by the government. Why three IEDs and why two synagogues? Would not one IED and one synagogue have gotten the same press coverage for the government? Would that not have been Dayenu, enough? What purpose did the fake missiles that the government supplied and their chosen location of Stewart Air Force base, serve other than that of enhancing the sentence to include a mandatory minimum ?

---

[1], Sentencing Letter of Mr. James Cromitie, dated May 25, 2011. Sentencing Memorandum of Mr. David Williams, dated June 2, 2011.

The Honorable Colleen McMahon  June 3, 2011
United States District Court Judge  Page 2
Southern District of New York

Re: <u>United States v. James Cromitie, et.al (Onta Williams)</u>
    09 Cr. 558(CM)

From the very beginning of the government' trolling the mosques for malcontents to the final arrest, the government engineered the entire operation choosing the sites and the creating the weapons. They supplied all the necessary ingredients including transportation and the promise of significant financial remuneration to the impoverished defendants. This was all done through their paid CI, a fraudster, tax evader and perjurer whom the government relied on for the "truth".

As this Court so succinctly noted "[i]t is beyond question that the Government created the crime here" (Amended Decision and Order Denying Defendants' Post-trial Motions, May 10, 2011, p. 44.) The Court stated earlier in the Decision that," [t]here is not the slightest doubt in my mind that James Cromitie could never have dreamed up the scenario in which he became involved…and…" if by some chance Cromitie had imagined such a scenario, he would not have had the slightest idea how to make it happen." (Id. at 15.) There is no dispute that the government determined that three IEDs and two synagogues would be the targets, nor that 30 pounds of fake explosives would be used. Indeed the testimony was that the weight of the IEDs was determined by chance, by the mere happenstance of a canvas bag lying on the floor. The decision to buy two more bags and fill them with the fake explosives was also entirely the government's idea. There is no evidence that any of the defendants suggested the weight or type of explosive to be used or that three IEDs were required for the plan. Similarly, it was the government who introduced the missiles, whose only purpose in the entire scenario was sentencing manipulation and a twenty five year mandatory minimum. This Court has repeatedly noted that this case is *sui generis*. Suffice it to say that this verdict has given the government the imprimatur to create crimes where non existed and to excise Due Process from the Constitution.

## THE PRE SENTENCE REPORT AND OBJECTIONS

We have received and reviewed the Pre-sentence Investigation Report ("PSR") and incorporate Mr. Comitie's and Mr. David Williams' objections to the Guideline calculations contained therein. The facts as reported in the PSR are those of the government and even when viewing the evidence most favorable to the government the facts as presented are skewed and do little to enlighten any new eyes to what actually transpired during the ten months that this saga took to play out.

The Honorable Colleen McMahon                                     June 3, 2011
United States District Court Judge                                     Page 3
Southern District of New York

Re: **United States v. James Cromitie, et.al (Onta Williams)**
    **09 Cr. 558(CM)**

Onta Williams will be 35 years old in two weeks. He has spent the past twenty years involved, initially, in low level street crime which escalated to low level drug crime. He is the product of the streets. He is not now nor was he ever a radicalized Muslim and has never been involved with any terrorist organization. His criminal conduct began prior to his fourteenth birthday when he caught his first charge. Over the years he has been convicted of theft, street fights, and drug possession and dealing. He is currently on supervised release from a federal conviction for possession with intent to distribute crack cocaine and for possession of a firearm. Mr. Williams' pending supervised release violation should be reassigned to this Court and he should be sentenced on that violation simultaneously by this Court as this Court has a clear understanding of his role in the instant offense.

We object to the enhancement under §3A1.4(b) as this offense neither involved nor was it intended to promote terrorism. Despite the government's ravings at the initial presentment that this was a terrorist act they later conceded that this was in fact not a terrorist case, and this Court has referred to this as the "unterrorist case." Therefore CHC V is the correct category.

The PSR calculates the adjusted gross offense level at 60. For the reasons stated in co-defendants' submissions we join in all of the Guideline calculation objections as they relate to Mr. Onta Williams. [2] While the PSR gives Mr. Cromitie an enhancement for his perceived 'supervisory" role in the offense, they have failed to give Mr. Williams a deduction for his minimal role in the offense. The evidence presented at trial clearly established that Mr. Williams was no more than a body, a "lookout" recruited at the repeated insistence of the government. He had no role whatsoever in the planning or implementation of the government's operation. He was, in every sense, merely along for the ride. In fact on his initial trip to Connecticut when he believed, justifiably, that they were being followed he returned to Newburgh and did not accompany the group to Connecticut. It seems he had to pick his child up at day care. Clearly an indication of where his priorities lay. He was not needed for any purpose and indeed served no purpose. Therefore, a -4 level role adjustment is appropriate. In fact the jury confirmed his diminished culpability in his acquittal of the last count.

---

[2] This Court has requested that we do not submit "lengthy" sentencing submissions. As this Court is familiar with all of the fact of this three year saga, we have omitted a recitation of both the factual and procedural history of the case but do incorporate co-defendants' submissions and objections.

The Honorable Colleen McMahon  
United States District Court Judge  
Southern District of New York

June 3, 2011  
Page 4

Re: <u>United States v. James Cromitie, et.al (Onta Williams)</u>
    09 Cr. 558(CM)

Mr. Williams' mother was a crack addict (PSR ¶ 118,) who died form HIV related illness, (PSR, p. 23,¶ 117.) His father was never around and had moved to Indiana prior to his birth. By the age of 14 he was traveling around selling drugs and not surprisingly, by the time he was 15 he was using drugs on a daily bases. His mother worked sporadically, but by and large they lived on public assistance. The PSR states that he had been classified as "learning disabled" in school; there is no evidence that he ever received the remedial help he so desperately needed. (PSR p. 25 ¶ 130.) To his credit he did receive a GED while incarcerated and prior to his involvement in the instant offense was working at C&S as a stock person. He is married, but separated from his wife and has two children and a step child whom he had been supporting. He is currently in child support arrears due to his incarceration.

There certainly exists a black hole on any evidence of Mr. Williams "readiness" to commit the crimes. The evidence shows that he was enlisted to be a lookout because Hussain constantly badgered Cromitie for bodies. There could be no conspiracy without the recruits and the government wanted more than just Mr. David Williams. Mr. Onta Williams was no more than a body, he and the two other recruited bodies were a necessary element to complete the conspiracy. There was no evidence presented, nor could there have been, of any predisposition. He had never been involved in any terrorist activity and the search of his apartment yielded no terrorist propaganda. "The issue common to all three men is the conspicuous lack of *any* evidence about their thoughts on jihad or terrorism prior to the time they were recruited." (Amended Decision, p. 16.) In the many months that Hussain spent fishing for participants for his operation he never once met Onta in the mosque and never heard his name mentioned by Mr. Cromitie. Indeed, Mr. Williams did not attend the mosque until he went with Hussain after he was recruited and even then went only once. He was not a terrorist; he had never espoused anti-American sentiments until he was offered $10,000 to do so. By the time he was recruited the government had its plan in place, its targets picked and their fake weapons ready to go. This Court recognized that the three recruits' "… participation in the criminal activity…occurred entirely after they first encountered the government agent" and that "…*everything* that these three defendants did was at the behest of the Government." (Amended Decision, p. 23.)

We do not believe that this Court's holding that the" brevity" of their recruitment is sufficient to "suggest predisposition" (Id. at 40.) Yet this Court further stated, referring to Onta Williams and Payen, that, "[b]oth men helped to plan the attacks…"( Id. at 42.) We

The Honorable Colleen McMahon  June 3, 2011
United States District Court Judge  Page 5
Southern District of New York

Re: **United States v. James Cromitie, et.al (Onta Williams)**
    **09 Cr. 558(CM)**

believe that the evidence shows otherwise. However, there is little point in reiterating the entire entrapment argument here as it will be amply addressed in defendants' appeal.

This Court has found that Hussain repeatedly committed perjury, yet, surprisingly credits his testimony regarding unrecorded conversations. How can anything Hussain said on the witness stand be credited when there was so much that was not recorded? Significantly, there was so much the government did not know about Hussain and certainly did not know about what went on during the ten months of their operation. To credit any of his testimony regarding the unrecorded conversations because they appear, or do not appear in an FBI report is merely to ignore that he lied to his handlers who relied on his statements, in formulating their reports. The fact that his lies are in an FBI report do not make them truths. Additionally, his testimony was not only overly rehearsed but in fact paid for as he stated that he was paid for his trial prep time. This Court was well aware of his perjured testimony. "There is no question in my mind that Hussain perjured himself at trial in connection with his testimony about the inducements offered to Cromitie to get him to participate in the mission." (Amended Decision p. 48.) Indeed, if Hussain's mouth was moving on the witness stand he was lying. There was virtually no fact about his personal life that was not a lie. He was not confused, as the government contends, he was lying. Therefore, there can be no reliance on what was said during any unrecorded conversation, nor can there be any reliance on his testimony regarding the financial rewards he offered all of the defendants.

This is a critical issue as the financial inducements were of the greatest significance to these impoverished defendants. The money was the *sine qua non* of crime. Despite what the defendants espoused on the tapes, they were all aware they had to appear to "join" team JEM to get their money. As an aside, Mr. Williams though that JEM was a "dude" named Jason Mohamed, so much for his terrorist education.

This Court must first determine the correct guideline calculation before going to the factors enumerated in §3553. Co-defendants have outlined in detail what we believe is the correct calculation and we join their requests for a variance.

**SENTENCING ENTRAPMENT AND SENTENCING FACTOR MANIPULATION**

The Honorable Colleen McMahon  June 3, 2011
United States District Court Judge  Page 6
Southern District of New York

**Re: United States v. James Cromitie, et.al (Onta Williams)**
    **09 Cr. 558(CM)**

Sentencing entrapment occurs when the government induces the defendant to commit a more serious crime than he would have otherwise been involved with. The prime example is generally the drug dealer who sells small amounts of cocaine and is induced by the government through their informant to sell much large quantities which greatly enlarges his sentencing exposure. This Court has denied all of defendants' motions to date, however we submit that the "extra ordinary" misconduct in the manipulation of this crime warrants a different conclusion on defendants' sentencing motions. Sentencing manipulation occurs when the government "improperly enlarges the scope or scale of a crime" to secure longer sentences than would otherwise obtain" *United States v. DePierre*, 599 F.3d 25, 28, 29 (1st Cir.2010), (citations omitted) "... this claim and the entrapment defense have evident similarities: the claims may closely overlap in a single case ..." *Id.* 29. In a finding of sentencing manipulation the court, not the jury can adjust the "sentence downward if the judge concludes that the government has improperly enlarged the scope or the scale of the crime to secure a higher sentence. *Id.* 29

 Indeed this Court has stated that in the Amended Decision, (p. 44.) Where as here, the Court has held that the government created the crime, and in fact stated that but for the government James Cromitie could never have committed the crime (p. 15) there can be no doubt that there was both sentencing entrapment and manipulation.

The Second Circuit's most recent discussions on this issue, are all unpublished decisions. In *United States v. Deacon*, 2100 WL 802399 (C.A.2(N.Y.)), decided March 9, 2011, the court stated that this circuit "has not yet recognized the doctrines of **sentencing manipulation** or **sentencing entrapment**. "Sentencing entrapment ..."normally 'requires that a defendant convince the fact-finder that the government agents induced her to commit an offense that she was not otherwise predisposed to commit.' *Deacon*, *United States v. Caban*, 173 F.3d 89, 93 n.1.(2nd Cir. 1999). The Court goes on to state that "...the Second Circuit has suggested that for a claim of **sentencing manipulation** to be "valid, 'it would likely require a showing of "outrageous" government conduct.'" *United States v. Gagliardi,* 506 F3d 140, 148(quoting *United States v. Bala*, 236 F.3d 87, 93 (2nd Cir. 2000)).Clearly the Circuit has not closed the door on the defense, but rather suggests what would be necessary for such a claim to succeed.

In *United States v. Oliveras,* 359 Fed. Appx 257 2010 WL 46872(C.A.(N.Y.)), another recent unpublished opinion, the district court sentenced Oliveras below the statutory minimum. The Circuit found that , "..district courts, generally lack the authority to

The Honorable Colleen McMahon                                  June 3, 2011
United States District Court Judge                              Page 7
Southern District of New York

Re: **United States v. James Cromitie, et.al (Onta Williams)**
    **09 Cr. 558(CM)**

impose a sentence below the statutory minimum." Because the Circuit no doubt chooses it words carefully with specificity, the qualifier, "generally" does not mean never, but rather most of the time, or as a general rule. We submit that our case is just such a claim.

The First Circuit in *United States v. Richardson*, 515 F.3d 74, (1st Cir. 2008') stated that a claim of extra ordinary government misconduct "…need not be limited to a request for discretionary departure, that it applies to the statutory mandatory minimums as well as the guideline ranges. Sentencing factor manipulation occurs when the authorities "venture outside the scope of legitimate investigation and engage in extraordinary misconduct that improperly enlarges the scope or scale of the crime. *Id.* 86, citing, *United States v. Sanchez-Berrios*, 424 F3d 65, 78-79 (1st Cir. 2005). While Richardson failed in his appeal to gain the relief sought, we respectfully ask this Court to find that the government went well beyond the scope of an investigation, which they clearly did as there was no crime to investigate until they created one, and sentence below the mandatory minimum. The enlargement of our crime is clearly the addition of the two extra IEDs and the and the enlargement of the scope applies to the missiles.

"The First Circuit has long recognized that sentencing manipulation occurs where the government has engaged in "extra ordinary misconduct" *United States v. Capelton*, 350 F.3d 231, 246(1st Cir. 2003) citing, *United States v. Montoya*, 62 F.3d 1, 4-5(1st Cir. 1995.) They have also recognized, "…the court's power to impose a sentence below the statutory mandatory minimum as an equitable remedy for sentencing factor manipulation by the government." *United States v. Fontes*, 415 F.3d 174, 180 (1st Cir. 2005) 180, citing *Capelton* at 246. Even the Guidelines, which are now merely advisory, recognize that the government's sentencing entrapment is a grounds for a downward departure when agents set a price for drugs that is substantially lower than the market value so that the defendant in a reverse sting purchases a larger quantity thereby increasing the drug weight and the Guidelines. (Sec. 2D1.1 Commentary Note 14.)

The Ninth Circuit, referring to the mandatory Guidelines found that"…government abuse can be discouraged and corrected only if courts are able to ensure that the government has some reason to believe that defendants are predisposed to engage in a drug deal of the *magnitude* for which they are prosecuted. *United States v. Staufer,* 38 F.3d 1103, 1107,

The Honorable Colleen McMahon  June 3, 2011
United States District Court Judge  Page 8
Southern District of New York

    Re: **United States v. James Cromitie, et.al (Onta Williams)**
        09 Cr. 558(CM)

(8th Cir. 1994.) Staufer's entrapment defense failed, but the court found that he was entitled to a downward departure on the bases of sentencing entrapment. This was a reverse sting wherein Staufer wanted to sell 5,000 tabs of LSD but the CI insisted that he would only do the deal for 10,000 tabs and increased the price he was willing to pay for the drugs. Like our defendants he was"…experiencing serious financial difficulties. He had no money to his name…" *Id.* 1105. There the court refers to "sentencing entrapment" or "sentencing factor manipulation" which occurs "…when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to a greater punishment." *Id.* 1106, cites omitted. The court held that "sentencing entrapment may be legally relied upon to depart from the Guidelines" *id.* 1008, citations omitted. Subsequently the Ninth held that a gun enhancement was not applicable where the defendant proves sentencing entrapment. *United States v Parrilla,* 114 F.3d 124(9th Cir. 1997),citing extensively to *Staufer.*

The Eleventh Circuit calls it "sentencing factor manipulation" delineating "…sentencing entrapment which focuses on the defendant's predisposition, sentencing factor manipulation focuses on the government's conduct" "It requires us to consider whether the manipulation in a sting operation, even if insufficiently oppressive to support an entrapment defense…or due process claim…must sometimes be filtered out of the sentencing calculus". *United States v. Sanchez,* 138 F.3d 1410, 1414 (9th Cir. 1998), citing *United States v. Connell,* 960 F.2d 191,194 (1st Cir. 1992.) However, the court did not find that the facts of the case warranted a downward departure. While the Eleventh Circuit does not "recognize sentencing entrapment as a viable defense they "do recognize the outrageous government conduct defense, and…have consider sentencing manipulation as a viable defense. *United States v. Ciszkowski,* 492 F.3d 1264, 1270 (11th Cir. 2007). *Sanchez* at 1413-1414.

There is no view of the evidence that indicates that these defendants, as opposed to the government, determined that there should be two synagogues and three IEDs. Having been convicted at trial, the jury found that the defendants were not entrapped as to the crime. However, this does not preclude this Court's finding that there was both sentencing entrapment and sentencing manipulation. Clearly, one IED and one synagogue would have gained the same convictions and the same end result for the government. The additional IEDs and synagogue merely enlarged the scope of the crime,

The Honorable Colleen McMahon             June 3, 2011
United States District Court Judge         Page 9
Southern District of New York

Re:  **United States v. James Cromitie, et.al (Onta Williams)**
     **09 Cr. 558(CM)**

resulting in a higher guideline calculation. The introduction of the missiles, however, is sentencing manipulation as it improperly enlarged both the scale and the scope of the crime and had no purpose other then to do so.

The government, not the defendants, chose Stewart Air Force base and the government, not the defendants, introduced and supplied the missiles. It was Hussain who first brought up that planes were flying out of the base and bringing weapons that were killing their Muslim brothers. Cromitie, who lived minutes from the base, had no knowledge of what was going on there and in fact had never been there until Hussain brought him there and hatched the government's plan. The entire trip to Connecticut and the missiles were introduced by the government for the singular purpose of securing a 25 year mandatory minimum sentence.

This is a case where both sentencing entrapment, the two additional IEDs and manipulation, the missiles warrant a drastically reduced sentence. Unlike the drug cases, Onta Williams was not previously involved in anything close to this before, nor was there any evidence he had any involvement with either bombs or missiles. This Court should take the bold step of finding that the government's introduction of the additional bombs, and the missiles are clearly "extra ordinary misconduct" and eliminate them from the sentencing calculations

For the reasons stated above we respectfully ask this Court for a variance and to sentence Mr. Williams below the statutory minimum.

Respectfully Submitted,

*/s/ Susanne Brody*

Mark Gombiner, Esq.
Susanne Brody, Esq.
Attorneys for the Defendant Onta Williams

The Honorable Colleen McMahon  June 3, 2011
United States District Court Judge  Page 10
Southern District of New York

Re: **United States v. James Cromitie, et.al (Onta Williams)**
    **09 Cr. 558(CM)**

cc: David Raskin, Esq.
    A.U.S.A

   Jason P.W. Halperin, Esq.
   A.U.S.A.

   Adam Hickey, Esq.
   A.U.S.A.

   Keri Lawrence, Esq.
   Attorney for Mr. James Cromitie

   Theodore Green, Esq.
   Attorney for Mr. David Williams

   Samuel Braverman, Esq.
   Attorney for Mr. Laguerre Payen

   Mr. Ross N. Kapinsky,
   Sr. U.S. Probation Officer

   Mr. Onta Williams