UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ONTA WILLIAMS, A/K/A "HAMZA",
PETITIONER

v.

UNITED STATES OF AMERICA,
RESPONDENT.

CASE NO. 09 CR. 558 (CM)
28 U.S.C. § 2255

## LIBERAL CONSTRUCTION

COMES NOW ONTA WILLIAMS, A/K/A "HAMZAH", HEREINAFTER REFERRED TO AS PETITIONER, PROCEEDING PRO SE AND PRAYS THIS HONORABLE COURT APPLY LIBERAL CONSTRUCTION TO THE INSTANT FILING AS AFFORDED ALL PRO SE LITIGANTS/INMATES. (SEE MAINE V. KERNER, 404 U.S. 519 (1972)).

## RELEVANT PROCEDURAL HISTORY

PETITIONER WAS CONVICTED BY A JURY IN THIS HONORABLE COURT ON OR ABOUT JULY 8, 2011 FOR THE CHARGES OF: ONE COUNT OF A CONSPIRACY TO USE WEAPONS OF MASS DESTRUCTION IN VIOLATION OF 18 U.S.C. § 2332a(a)(2)(c), THREE COUNTS OF ATTEMPT TO USE WEAPONS OF MASS DESTRUCTION IN VIOLATION OF THE SAME SECTION, ONE COUNT OF CONSPIRACY TO ACQUIRE AND USE ANT-AIRCRAFT MISSILES

in violation of 18 U.S.C. § 2332g (a)(1), (b)(1), (b)(4), (b)(5) and (c)(1), one count of attempt to acquire and use anti-aircraft missiles also in violation of the preceding sections, and one count of conspiracy to kill officers and employees of the United States in violation of 18 U.S.C. §§ 1114 and 1117.

On June 29, 2011, Petitioner was sentenced to a term of imprisonment of 25 years on each count to run concurrently, the mandatory minimum, five years' supervised release, and a $700.00 special assessment.

On July 15, 2011, Petitioner filed a timely notice of appeal.

On or about February 1, 2012 said appeal was filed with the U.S. Court of Appeals for the Second Circuit.

On August 22, 2013, the U.S. Court of Appeals for the Second Circuit affirmed Petitioner's convictions in a lengthy opinion.

On or about October 8, 2013, Petitioner filed a motion for rehearing or rehearing en banc, which was subsequently denied.

Petitioner then filed a petition

for a writ of certiorari with the U.S. Supreme Court, which was denied on October 6, 2014.

Now, Petitioner brings the instant motion pursuant to 28 U.S.C. § 2255 which this Honorable Court has jurisdiction to entertain.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BROUGHT PURSUANT TO 28 U.S.C § 2255

Petitioner brings the instant action claiming various violations of his constitutional rights accruing as a result of the prosecution for the charges of which he was convicted by a jury.

Specifically, and in his first claim, Petitioner avers that the charges that were brought against him were a direct result of the United States' Attorney's Office, through and in concert with the Federal Bureau of Investigation's, use of "selective investigation and prosecution," of a person (himself) exercising his First Amendment right of freely observe and practice his religion.

Petitioner states that while attending a mosque for regular prayers and worship in observance of his Islamic faith, he became the target of an investigation into alleged terrorist plots/activities that were non-existent, but were merely the conjurings and fabrications of one F.B.I. Agent Robert Fuller's desire and aspirations of grandeur, with the full faith and support of the U.S. Attorney's Office for the Southern District of New York, an assumption made by petitioner, but rooted in fact as evidenced by the initial "hype" and "over dramatizing" of the facts of the so called terrorist case by Agent Fuller and the U.S. Attorney's Office from the beginning of the investigation until the government was forced to concede that this was in fact "not" a terrorist case at all. (See sentencing transcripts pg. 24, Ln. 21-25 and Pg. 25, Ln. 1-5).

Petitioner and his co-defendants were not engaged in any criminal activity at the time of the investigation that led to his conviction, but was the product of selective investigation and

prosecution which, under this circumstances, should have warranted dismissal of the entire case. There was no reason to believe that either petitioner or his co-defendants were engaged in or conspiring to engage in any criminal activity prior to or once the investigation began. In fact, no criminal activity was ever mentioned, let alone perpetrated by petitioner or his co-defendants, prior to the government's suggestions and inducements through its paid and lying informant Shahed Hussain. This fact is evidenced during petitioner's sentencing and conceded to by the government, reiterated by the court and memorialized in petitioner's sentencing transcripts at: Pg. 18, Ln. 1-9; Pg. 18 Ln. 17-25; Pg. 19, Ln. 1; Pg. 34, Ln. 15-25; Pg. 35, Ln. 1-7; Pg. 39, Ln. 13-25; Pg. 41, Ln. 15-25; Pg. 57, Ln. 17-25; Pg. 58, Ln. 1-5; Pg. 63, Ln. 22-24; Pg. 65, Ln. 9-12.

Based on these facts, it is clear that the "investigation" of petitioner and his co-defendants for alleged terrorist activities was not warranted and a violation of petitioner's Fourth and Fourteenth Amendment rights as the only reason petitioner was targeted was due to his

religious beliefs and practices, i.e., Islam. Petitioner was targeted due to his being a practitioner of the same faith as those evil and vile criminals who carried out the tragedies of September 11, 2001. Petitioner adamantly denounces, despises and disassociates himself from those terrorist and their despicable acts. Nevertheless, the tragedy of that fateful day, coupled with the paranoia and stereotyping of Muslims as all terrorists, motivated the investigation and prosecution of petitioner and his co-defendants. (See Sentencing Transcripts Pg. 57, Ln. 17-25; Pg. 58, Ln. 1-5; Pg. 34, Ln. 15-25.

    Petitioner asserts that for the government, through its overzealous agent Robert Fuller, and its selfserving, discredited and lying paid informant Shahed Hussain, targeted petitioner for investigation, prosecution and labeled him a terrorist for no apparent reason other than the fact that he is a Muslim who attended prayer services at a mosque. The F.B.I. and the government had no reason to believe, nor probable cause to begin an investigation into any possible criminal activity, terroristic or otherwise,

perpetrated by petitioner or his co-defendants. In post 9/11, it has become commonplace to investigate, fabricate and prosecute alleged terrorist charges against individuals purely on the basis of their religious affiliations, which in and of itself has the potential to shock the conscience of any rational mind who believes in equality, freedom of religion and justice for all. The very principles and beliefs our great country was attacked for on that fateful day in September 2001. To investigate, prosecute and convict one due to his religious beliefs is akin to attacking one for the same. Though the end result may differ, the dire and longterm affects and ramifications are almost undiscernable.

Petitioner contends that, not only was the investigation of him and his co-defendants unwarranted, unfounded and unjustified, the government never proved, and the record speaks to the contrary, that petitioner was predisposed to commit the charged crimes separate and independent of the government's involvement, inducements and manufacturing of the crimes. This case, unlike United States v. Chin, 934 F.2d 393 (2d. Cir 1991), in where the Second Circuit ruled that, "even if the due process clause required some individualized suspicion before government agents could target an individual for intrusive undercover investigation, on the facts of Chin, that requirement would not require reversal of his conviction because there was no constitutionally cognizable invasion of his privacy as a result of the initial mailing to Chin, and, as to the later mailings to Chin, these communications all took place after Chin had ordered child pornography and thus were supported by a reasonable belief that Chin was likely to violate the law," presents a cognizable constitutional claim that

Petitioner reasonably expected privacy and the freedom to practice his religion without intrusion from the Government. Especially since, and the record supports the fact that Petitioner was not engaged in any illegal activity and was in fact a law abiding citizen before the Government interjected itself into Petitioner's life and manufactured the case and charges against Petitioner. After, the U.S. Supreme Court decided a case, Jacobson v. United States, 503 US 540, 118 LEd 2d 174, 112 S Ct 1535 (1992) in which the court decided the question of "... whether the Government carried its burden of proving that Petitioner was predisposed to violate the law before the Government intervened," this precedent became law and the Government had/has the burden of proving that a defendant is predisposed to violate the law "before the Government intervened," a fact, in Petitioner's case and supported by the record, the Government had/did not. (See Pg. 34, Ln. 15-25 of Sentencing Transcripts). In Jacobson, a five Justice majority of the court determined that the prosecution's evidence of Jacobson's predisposition

garnered prior to the initiation of its undercover campaign, as well as the predisposition evidence developed during the government's investigation of Jacobson, failed to carry the prosecution's burden of proving that Jacobson was disposed to commit the crime independent of the government's coaxing. The court reversed Jacobson's conviction because it determined that "rational jurors could not say beyond a reasonable doubt that petitioner possessed the requisite predisposition prior to the government's investigation and that it existed independent of the government's many and varied approaches to petitioner", id. at 1543. And, as the dissent noted in the Jacobson decision, "the court held that the government must prove not only that a suspect was predisposed to commit the crime before the opportunity to commit it arose, but also before the government came on the scene," id. at 1544, 1545. More relevant portions of the Jacobson decision follow: In Jacobson, it was held that the government, which did not dispute that it had induced the farmer to violate § 2252(a)(2)(A), had

"failed, as a matter of law, to adduce evidence to support the jury verdict that the Farmer was predisposed, prior to and independent of the acts of the government and beyond a reasonable doubt," Jacobson, supra. In Jacobson, the court opined that "Congress had not intended that the detection and enforcement processes of § 2252(a)(2)(A) should include instigation by by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them," Jacobson. Likewise, in the present case, it can be said that Congress did not intend for the government to instigate and lure innocent people into the commission of the crimes for which petitioner stands convicted and punish them for the same. "... government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce the commission of the crime so that the government may prosecute... In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to